# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEW MEXICO

In re:  RALPH LEO BRUTSCHE,                                    No. 11-13326-j7

      Debtor.

YVETTE GONZALES, Chapter 7 Trustee,

      Plaintiff,

v.                                                                            Adversary No. 11-01189-j

MARC LOIS LIBERMAN, et al,

      Defendants.

## <u>MEMORANDUM OPINION</u>

THIS MATTER is before the Court on Defendants' Motion for Summary Judgment (the "Motion for Summary Judgment") (Docket No. 6), filed by and through their attorneys of record, Modrall Sperling, Roehl, Harris, & Sisk PA (Spencer Edelman and Paul Fish). Defendants Grevey-Liberman[1] filed a brief with supporting papers (Docket No. 7). Plaintiff Ralph Leo Brutsche[2] filed a response with supporting papers, and Grevey-Liberman filed a reply with supporting papers (Docket Nos. 11 and 14).

---

[1] The complete list of Defendants in this adversary proceeding (together referred to as "Grevey-Liberman") is as follows: Marc Lois Liberman; Bank of America, N.A. as Trustee of the Marc Louis Liberman Trust established under the Marguerite Liberman Revocable Trust; Bank of America, N.A. as Trustee of the Michele Louis Liberman Revocable Trust; Helen A. Grevey; Marianne Fischer; Francis S. Liberman; Wells Fargo, N.A. Trustee of the Ira. L. Liberman and Frances S. Liberman Revocable Trust; Eileen Grevey Hillson as Trustee under the Lisa Marie Clifford Trust #1; Eileen Grevey Hillson as Trustee under the Sean David Clifford Trust #1; Eileen Grevey Hillson as Trustee under the Jack and Joanne M. Grevey Trust for the Benefit of Lisa Marie Clifford; Eileen Grevey Hillson as Trustee under the Jack and Joanne M. Grevey Trust for the Benefit of Sean David Clifford; and Eileen Grevey Hillson.

[2] Yvette J. Gonzales, Chapter 7 Trustee, was substituted as the Plaintiff in this adversary proceeding by order of the Court on October 2, 2012. *See* Order Substituting Yvette J. Gonzales, Chapter 7 Trustee, as Plaintiff (Docket No. 29). Because Mr. Brutsche filed the response to the Motion for Summary Judgment and provided all of the exhibits

Mr. Brutsche commenced this adversary proceeding for breach of contract, unjust enrichment, and to avoid and recover fraudulent transfers pursuant to 11 U.S.C. §§ 544, 550(a), and 511 and under the New Mexico Fraudulent Transfer Act, N.M.S.A.1978 § 56–10–18(A)(2) (1989). *See* Complaint for Breach of Contract, Unjust Enrichment, and to Avoid and Recover Fraudulent Transfers Pursuant to 11 U.S.C. §§ 544, 550(a), 551, and the New Mexico Fraudulent Transfer Act ("Complaint") (Docket No. 1). Grevey-Liberman seek summary judgment in their favor on Mr. Brutsche's claim for breach of contract contained Count 1 of the Complaint on the grounds that Mr. Brutsche failed to fulfill several necessary conditions entitling him to performance under the contract. Mr. Brutsche counters that, among other things, Grevey-Liberman waived the conditions by their prior course of dealing with him. *See* Response in Opposition to Defendants' Motion for Summary Judgment (Docket No. 11) ("Response").

After consideration of the Motion for Summary Judgment, Grevey-Liberman's Response, Mr. Brutsche's reply, and all the supporting affidavits and other documents, and being otherwise sufficiently informed, the Court finds that the facts not subject to genuine dispute establish, as a matter of law, that Grevey-Liberman did not breach their contract with Mr. Brutsche. The Court will therefore grant the Motion for Summary Judgment and dismiss Count 1 of the Complaint.

## SUMMARY JUDGMENT STANDARDS

Summary judgment, governed by Rule 56, Fed.R.Civ.P., will be granted when the movant demonstrates that there is no genuine dispute as to a material fact and that the movant is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(a), made applicable to adversary proceedings by Rule 7056, Fed.R.Bankr.P. "[A] party seeking summary judgment always bears

---

and the affidavit in support of the response, the Court will refer to Mr. Brutsche as the Plaintiff for purposes of this Motion only.

-2-

the initial responsibility of informing the ... court of the basis for its motion, and ... [must] demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The party seeking summary judgment must set forth by number all material facts the movant contends are not subject to genuine dispute, and refer with particularity to the portions in the record upon which the movant relies. NM LBR 7056-1(b). In considering a motion for summary judgment, the Court must "examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." *Wolf v. Prudential Ins. Co. of America,* 50 F.3d 793, 796 (10th Cir. 1995) (quoting *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.,* 912 F2d 1238, 1241 (10th Cir. 1990)).

"[A] party opposing a properly supported motion for summary judgment may not rest on mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial" through affidavits or other supporting evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed .2d 202 (1986). Furthermore, New Mexico Local Bankruptcy Rule 7056–1(c) provides that the party opposing summary judgment must: 1) list the material facts as to which the party contends a genuine fact exists; 2) "refer with particularity to those portions of the record upon which the opposing party relies;" and 3) "state the number of the movant's fact that is disputed." NM LBR 7056-1(c). Properly supported material facts set forth in the movant's motion are "deemed admitted unless specifically controverted" by the party opposing summary judgment. NM LBR 7056-1(c).

FACTS NOT SUBJECT TO DISPUTE

The following facts are not subject to genuine dispute:

Case 11-01189-j    Doc 33    Filed 11/08/12    Entered 11/08/12 16:53:11 Page 3 of 15

1.      In 2005, Mr. Brutsche purchased undeveloped real property in Santa Fe County, New Mexico (the "Property") from Grevey-Liberman or Grevey-Liberman's predecessors. *See* Complaint, ¶¶ 10 and 11; Grevey-Liberman's Answer to Complaint, ¶ 11 ("Answer") (Docket No. 1).

2.      On or about June 24, 2005, Mr. Brutsche executed a Secured Promissory Note (the "Note") in favor of Grevey-Liberman or their predecessors in the amount of $5,182,000.00. *See* Motion for Summary Judgment, ¶ 2; Response, ¶ 12. The Note called for annual payments of $460,304.00 plus accrued interest. *See* Secured Promissory Note attached to the Complaint as Exhibit A (Docket No. 1-1).[3] The Note provides that payments are to be applied first to any accrued interest and then to principal. *Id*. The full amount of the debt due under the Note was due on June 24, 2010. *Id*.

3.      On June 24, 2005, Mr. Brutsche executed and delivered a mortgage (the "Mortgage") in favor of Grevey-Liberman or their predecessors pledging the Property and improvements thereon, rents, and profits as security for payment of the Note. *See* Mortgage attached to the Complaint as Exhibit B (Docket No. 1-2).[4] The Mortgage was duly recorded with the Clerk of Santa Fe County, New Mexico. *See* Complaint, ¶ 13; Motion for Summary Judgment, ¶ 3.

4.      Paragraph 5.15.5 of the Mortgage provides:

Partial releases from the lien of the Mortgage shall be given for the subdivided residential lots as generally shown on Exhibit B (Phase 1) and future residential lots for which there are future approved subdivision plats for future phases (total of 107 lots) (provided that the appropriate infrastructure security has posted with the County of Santa Fe for the

---

[3] Grevey-Liberman failed to proffer a true and complete copy of the Note in support of the Motion for Summary Judgment. The Court will consider the Note as evidence because Grevey-Liberman admitted that the copy of the Note attached to the Complaint was true and complete. *See* Complaint, ¶ 12; Answer, ¶ 12.
[4] Grevey-Liberman proffered a partial copy of the Mortgage in support of the Motion for Summary Judgment. The Court will consider the entire Mortgage as evidence because Grevey-Liberman admitted that the copy of the Mortgage attached to the Complaint was true and complete. *See* Complaint, ¶ 13; Answer, ¶ 13.

required infrastructure for the phase in which the lots to be released are located) at a Lot Release Price (principal payment per acre) of Seventy Three Thousand Dollars ($73,000.00) per lot plus all accrued interest due under the Note and subject to the following requirements: (A) Each generally shown on Exhibit C; and (B) the "shared lots" as shown on Exhibit C must be released first at a Lot Release Price of $25,000 per lot to be applied against the One Million Dollar credit referenced above.

5.      Paragraph 5.15.6 of the Mortgage provides:

Partial releases will be allowed only based on recorded subdivision plats and only for an entire lot or tract as shown on an approved recorded subdivision plat. Prior to any release of any Lots, an infrastructure guarantee (or equivalent bond, letter of credit, etc.) in favor of the applicable government entity must be in place to cover all infrastructure requirements applicable to such the subdivision plat (roads, sewer, utility lines, etc.). Mortgagor shall deliver to Mortgagee written notice requesting such partial release, identifying the lot(s) or tract(s) sought to be released (Request for Release). Mortgagor shall not be entitled to any partial releases during any period of time when there exists an event of default or an event with which the giving of notice or lapse of time, or both, would constitute an event of default pursuant to the terms of the Mortgage. Buyer shall pay all costs in preparing and recording each release and any necessary and reasonable out-of-pocket expenses incurred by Mortgagee in connection with any partial release.

6.      Between June 2007 and July 22, 2011, Mr. Brutsche paid Grevey-Liberman at least $529,209.00 in principal under the Note. *See* Motion for Summary Judgment, ¶ 4; Response, p. 2.

7.      Grevey-Liberman executed three partial releases in favor of Mr. Brutsche pursuant to the Mortgage. *See* Exhibit B to Affidavit of James P. Houghton, p. 6 (Docket No. 7-2). The partial releases were recorded with the Santa Fe County Clerk on July 7, 2005, July 24, 2006, and August 17, 2006. *Id.* Each partial release included a description of the metes and bounds of the tract(s) or individual lot numbers of land to be released from the lien of the Mortgage. *Id.*

8.      The Note and Mortgage were not in default at the time the three partial releases were executed. *See* Exhibits 1 and 3 to Affidavit of Ralph L. Brutsche ("Brutsche Affidavit") (Docket Nos. 12-1 and 12-3); Motion for Summary Judgment, ¶ 5; Response, p. 2.

Case 11-01189-j    Doc 33    Filed 11/08/12    Entered 11/08/12 16:53:11 Page 5 of 15

9.      On several occasions prior to June 2010, Mr. Brutsche did not immediately designate the lots to be released after he became entitled to a partial release. *See* Response, p. 7; Reply, p. 11.  Mr. Brutsche delayed identifying the desired lots after making his payments because he did not know which lots he would be selling or when he would be selling them. *Id.*

10.     Mr. Brutsche did not pay the full amount due under the Note on or before June 24, 2010 as required by the terms of the Note. *See* Motion for Summary Judgment, ¶ 7, Response, p 2.

11.     On July 2, 2010, Grevey-Liberman sent Mr. Brutsche a written notice of default of his obligations under the Note. *Id.* at p. 7.  Mr. Brutsche did not cure the default within 90 days after receiving the written notice of default. *See* Motion for Summary Judgment, ¶ 10; Response, p. 3.

12.     Mr. Brutsche filed a petition commencing a voluntary bankruptcy case under Chapter 11 of the Bankruptcy Code on July 22, 2011.

13.     On October 26, 2011, Mr. Brutsche, by and through his attorneys of record at that time, Arland & Associates, LLC (Edward Mazel), made demand for release of lots 40, 45, 48, 49, 50, and 27 in High Summit III, Phase 2 (the "Phase 2 Lots"), which were secured by the Mortgage. *See* Motion for Summary Judgment, ¶ 12, Response, p. 4.

14.     The final subdivision plat for High Summit III Phase 1 ("Phase 1") was recorded with the Santa Fe County Clerk on June 24, 2005. *See* Exhibit B to Affidavit of James P. Houghton, p. 32, 35 (Docket No. 7-2).

15.     A subdivision plat for High Summit III Phase 2 ("Phase 2") has not been recorded. *See* Motion for Summary Judgment, ¶ 14; Response, p. 4.

16.     Grevey-Liberman has not released any lots or other land from the lien of the Mortgage since August 2007.  *See* Exhibit B to Affidavit of James P. Houghton, p. 6 (Docket No. 7-2).

17.     Mr. Brutsche has never paid the full amount of all principal and interest owing under the Note.  *See* Motion for Summary Judgment, ¶ 10; Response, p. 3.

18.     Failure to duly and timely pay all principal and interest under the Note is an event of default under the Mortgage.  *See* Mortgage, Sections 1.02 and 4.01.


DISCUSSION

Mr. Brutsche asserts that Grevey-Liberman breached the Mortgage by refusing to release the Phase 2 Lots from the lien of the Mortgage in October 2011.  Grevey-Liberman counters that Mr. Brutsche failed to fulfill necessary conditions precedent to Grevey-Liberman's obligation to release the Phase 2 Lots from the lien of the Mortgage.  It is undisputed that Mr. Brutsche had not paid the full amount of principal and interest due under the Note when he made written demand for the partial release of the desired lots.  As discussed below, the facts not in genuine dispute as applied to the controlling law demonstrate that Grevey-Liberman did not breach their obligations under the Mortgage by failing to release the Phase 2 Lots from the lien of the Mortgage.  Consequently, the Motion for Summary Judgment must be granted.

1.  *Mr. Brutsche Did Not Satisfy the Conditions of the Mortgage and Is Not Entitled to Any Partial Releases.*

The Mortgage contains several conditions Mr. Brutsche must satisfy to entitle him to partial releases from lien of the Mortgage.  Mr. Brutsche asserts that the conditions were either

satisfied or waived and that Grevey-Liberman therefore breached the Mortgage by refusing to grant the requested releases. The Court disagrees.[5]

Pursuant to the terms of the Mortgage, which creates a lien against real property located in New Mexico, the Court will apply New Mexico contract law. *See* Section 5.11 (The Mortgage provides that it shall be "governed by and construed under and in accordance with the laws of the State of New Mexico.") The goal of contract interpretation is "to ascertain the intentions of the contracting parties." *Gallegos v. Pueblo of Tesuque*, 132 N.M. 207, 218, 46 P.3d 668, 679 (2002) (quoting *Ponder v. State Farm Mut. Auto. Ins. Co.*, 129 N.M. 698, 702, 12 P.3d 960, 964 (2000)). When discerning the purpose and meaning of a contract, the Court's duty "is confined to interpreting the contract that the parties made for themselves, and absent any ambiguity, the court may not alter or fabricate a new agreement for the parties." *WXI/Z Southwest Malls v. Mueller*, 137 N.M. 343, 347, 110 P.3d 1080 (N.M.App.2005) (quoting *CC Hous. Corp. v. Ryder Truck Rental, Inc.*, 106 N.M. 577, 579, 746 P.2d 1109, 1111 (1987)). As such, the Court "may not rewrite obligations that the parties have freely bargained for themselves ... [i]n the absence of fraud, unconscionability, or other grossly inequitable conduct." *United Props. Ltd. v. Walgreen Props., Inc.,* 134 N.M. 725, 729, 82 P.3d 535, 539 (N.M.App. 2003) (internal citations omitted).

The Mortgage provides that Mr. Brutsche is entitled to a partial release of a lot from the lien of the Mortgage only if the lot is within a recorded subdivision plat. Pursuant to Section 5.15.15:

> Partial releases from the lien of this Mortgage will be given for the subdivided residential lots as generally shown on Exihit B (Phase 1) and future residential lots for which there are future approved subdivision plats for future phases....

---

[5]  Because the Court has determined that the recorded subdivision plat condition is dispositive it need not address the whether any other conditions were satisfied or waived. The Court makes no determination regarding the other conditions.

-8-

Section 5.15.6 of the Mortgage similarly provides: "Partial releases will be allowed only on recorded subdivision plats." Thus, a recorded subdivision plat that includes the lot sought to be released is a condition to Grevey-Lieberman's obligation to release the lot from the lien of the Mortgage.[6]

The Mortgage also provides that "[m]ortgagor shall not be entitled to any partial releases during any period of time when there exists an event of default or an event with which the giving of notice or lapse of time, or both, would constitute an event of default." *See* Section 5.15.6. The Mortgage defines an event of default to include the "[f]ailure to pay any payment or other charge or expense due under the Note when due" if such failure remains uncured for a period of ninety (90) days after receiving a written notice of default. *See* Section 4.01.

Mr. Brutsche admits that on the date he demanded the partial releases of the Phase 2 Lots the subdivision plat for Phase 2 had not been recorded. He also admits that he has not paid the Note in full. Mr. Brutche argues that he is nevertheless entitled to a partial release of the Phase 2 Lots from the lien of the Mortgage, contending that: (1) Grevey-Lieberman waived the requirement that there be a recorded subdivision plat that included the Phase 2 Lots before a partial release of those lots was granted; and (2) all other conditions to lot releases have been satisfied or waived. Mr. Brutsche construes the Mortgage to mean that if he satisfies all conditions to lot releases that have not been waived *before* an event of default occurs, he has earned those lot releases and remains entitled to the earned releases *after* an event of default occurs. Mr. Brutsche construes the requirement to request lot releases in writing and designate which lot is to be released not as a condition to entitlement to a lot release but merely a

---

[6] "[A] condition precedent is an event occurring subsequently to the formation of a valid contract, an event that must occur before there is a right to an immediate performance, [and] before there is a breach of a contractual duty." *K.L. Conwell Corp. v. City of Albuquerque*, 111 N.M. 125, 129, 802 P.2d 634, 638 (1990).

Case 11-01189-j   Doc 33   Filed 11/08/12   Entered 11/08/12 16:53:11 Page 9 of 15

requirement for delivery of the release. Under this theory, Grevey-Lieberman was required to deliver partial releases of the Phase 2 Lots earned prior to default even though Mr. Brutsche's request for release and designation of lots occurred after an event of default.

Mr. Brutche argues waiver of the condition that a subdivision plat for Phase 2 be recorded prior to the execution of any partial releases under two theories: waiver by prior course of performance and express waiver. If a contract includes conditions to performance, such events must occur unless the conditions are waived before performance under the contract becomes due. *Nearburg v. Yates Petroleum Corp.,* 123 N.M. 526, 533, 943 P.2d 560, 567 (N.M.App. 1997) (citing Restatement (Second) of Contracts § 356 (1981)). Under New Mexico law, a contracting party may waive or modify contractual conditions through its prior course of dealing. *See Wal-Go Associates v. Leon,* 95 N.M. 565, 568, 624 P.2d 507, 510 (1981). Waiver is defined as "the intentional relinquishment or abandonment of a known right," and it may be express or implied. *J.R. Hale Contracting Co., Inc. v. United New Mexico Bank at Albuquerque*, 110 N.M. 712, 716, 799 P.2d 581, 585 (1990). "A waiver must be knowing and voluntary." *State v. Zamarripa*, 145 N.M. 402, 410, 199 P.3d 846, 854 (2008).

To show that Grevey-Liberman waived the recordation requirement by their prior course of performance, Mr. Brutsche must come forward with some evidence that Grevey-Liberman previously granted partial releases based on unrecorded subdivision plats.[7] It is undisputed that

---

[7] Since Mr. Brutsche bears the ultimate burden of proof at trial as to whether there was a waiver of the contractual condition, he must present some evidence at the summary judgment phase to create a genuine issue of material fact on that matter. *See Lopez v. LeMaster*, 172 F.3d 756, 759 (10th Cir. 1999) ("Where the nonmovant will bear the burden of proof at trial on a dispositive issue … that party must go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence, as a triable issue, of an element essential to that party's case in order to survive summary judgment.") By contrast, since Grevey-Liberman does not bear the burden of proof at trial as to whether they waived the recordation requirement, they can satisfy their burden by identifying a lack of evidence that the condition was waived. *See Bausman v. Interstate Brands Corp*., 252 F.3d 1111, 1115 (10th Cir.2001) (internal quotations omitted) (When a movant "does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim.").

the subdivision plat for Phase 1 was recorded in June 2005 before Grevey-Liberman granted any releases in favor of Mr. Brutsche. The partial releases executed on July 24, 2006 and August 17, 2006 included lots within Phase 1. Although it is unclear from the evidence before the Court in connection with the motion for partial summary judgment whether the partial release executed on July 7, 2005 included lots within a recorded subdivision plat (namely, Phase 1), Mr. Brutsche has provided no evidence to show that any releases were granted for property outside of Phase 1. As such, Mr. Brutsche has failed to make a sufficient showing to withstand summary judgment that Grevey-Liberman waived the recordation requirement by course of performance.

Mr. Brutsche also contends that Grevey-Liberman expressly waived their right to object to granting the partial releases because they failed to raise the issue of there not being a recorded subdivision plat that included the Phase 2 Lots in email correspondence from counsel for Greve-Liberman to counsel for Mr. Brutsche. In particular, Mr. Brutsche claims that Grevey-Liberman should have raised the issue in an email from counsel for Grevey-Liberman to counsel for Mr. Brutsche dated June 30, 2010 or in a notice of default letter from counsel for Grevey-Liberman to Mr. Brutche and his counsel dated July 2, 2010. In a letter from his counsel requesting an extension of the maturity date of the Note, Mr. Brutsche asserted that he was entitled to lot releases notwithstanding his failure to pay off the Note by its maturity date. In email correspondence responding to the letter, counsel for Grevey-Liberman stated: "I will check the terms of the Mortgage but after default I am not sure what release rights Mr. Brutche would have at this time." *See* Exhibit 2 to Brutsche Affidavit. Mr. Brutche asserts that because the email correspondence raised only one reason why Mr. Brutsche may not be entitled to lot releases (*i.e.* a default), Grevey-Liberman waived all other objections to granting lot releases.

The email correspondence from counsel for Grevey-Liberman to counsel for Mr. Brutsche does not establish a knowing, voluntary, and intentional relinquishment or abandonment of Grevey-Liberman's contractual right to withhold lots releases in the absence of a recorded subdivision plat. The email correspondence was in response to a letter written after the Note had matured requesting an extension of the maturity date. The email correspondence made it clear that counsel needed to check the terms of the Mortgage to determine what release rights, if any, Mr. Brutche still had. It does not evidence an intent on the part of Grevey-Liberman to waive all requirements for lot releases beyond the requirement that Mr. Brutsche not be in default.

Mr. Brutsche also asserts waiver because the notice of default letter gave notice of a default solely for the reason that Mr. Brutsche failed to make the final payment due under the Note. The failure to include in the letter a failure to record a subdivision plat for Phase 2 does not support Mr. Brutche's claim of waiver. Under the Mortgage, recording subdivision plats was a condition for lot releases. It was not also a promise. Failure to record a subdivision plat for Phase 2 did not, therefore, constitute a breach. There would be no reason to reference failure to record a subdivision plat in a notice of default letter. The Court therefore concludes that because recordation of a subdivision plat for Phase 2 is a condition to Mr. Brutsche's entitlement to the Phase 2 lot releases, and the condition did not occur, Grevey-Liberman is not obligated to grant partial releases for the Phase 2 Lots.[8]

Alternatively, Mr. Brutche argues that he still has the right to satisfy the contractual conditions to partial releases because an event of default has not occurred under the Mortgage.

_____

[8] In their Motion for Summary Judgment, Grevey-Liberman identifies several other conditions in the Mortgage that Mr. Brutsche allegedly failed to satisfy. In particular, Grevey-Liberman alleges that Mr. Brutsche failed to: (1) obtain an infrastructure guarantee (such as a letter of credit) in favor of the applicable government entity; and (2) submit a written demand identifying the desired lots to be released. The Court need not address whether Mr. Brutsche satisfied these additional conditions.

Mr. Brutsche asserts that he is not in default under the Note or Mortgage by failing to pay off the Note at maturity. He reasons that because Grevey-Liberman wrongfully failed to grant releases of Phase 2 Lots prior to the maturity date he was excused from his obligation to make the final payment due under the Note. However, regardless of whether a wrongful failure to grant releases would have excused a payment obligation, the Court has found that no such wrongful failure occurred. Mr. Brutsche did not become entitled to any partial releases prior to the maturity date because he had not satisfied the recordation requirement that was a condition to Grevey-Liberman's obligation to grant the partial releases. Grevey-Liberman did not wrongfully fail to execute partial releases of Phase 2 Lots prior to the maturity date of the Note for an additional reason. It would have been impossible for Grevey-Leberman to grant lot releases before the Note maturity date because Mr. Brutsche did not designate which Phase 2 Lots he wanted released until well over a year after the Note matured. Mr. Brutcshe's delay did not relieve him of his obligation to pay off the Note at maturity. By failing to pay the full amount due under the Note on or before the June 24, 2010 maturity date and by failing to cure such nonpayment within the 90-day cure period, Mr. Brutche defaulted under the Note and Mortgage. As a result, under the terms of the Mortgage he is not entitled to any further partial releases from the lien of the Mortgage.

Based on the foregoing, the Court concludes as a matter of law that at the time Mr. Brutsche made written demand for the partial release of the Phase 2 Lots he was in default under the Mortgage and at least one condition (*i.e.* recordation of the plat for Phase 2) to his entitlement to the lots releases had not been satisfied or waived. Therefore, Grevey-Lieberman did not breach the Mortgage by failing to grant the partial releases.

-13-

2. *Grevey-Liberman Did Not Hold the Partial Releases in Trust*

Finally, Mr. Brutsche asserts that Grevey-Liberman granted a partial release of the Phase 2 Lots upon receipt of his payments, held the releases in trust until he designated the specific lots to be released, and must deliver the lot releases out of trust now that they have been designated. To determine whether a trust relationship has been created, the Court must look to applicable state law. *Downriver Community Federal Credit Union v. Penn Square Bank Through Federal Deposit*, 879 F.2d 754, 760 (10th Cir. 1989). Under New Mexico law, the "elements of a valid trust include a competent settlor and trustee, intent by the settlor to create a trust, ascertainable trust res, a sufficiently ascertainable beneficiary or beneficiaries, a legal purpose, and a legal term." *Matter of Estate of Boyer*, 117 N.M. 74, 79, 868 P.2d 1299, 1303 (1994) (citing *In re Will of Coe*, 113 N.M. 355, 360, 826 P.2d 576, 581 (Ct.App.1992)).[9]

The undisputed facts establish that no trust relationship existed between Grevey-Liberman and Mr. Brutsche. Mr. Brutsche presented no evidence that Grevey-Liberman agreed or otherwise intended to hold the partial releases in trust. Further, there was no ascertainable trust res. Because Mr. Brutsche had not designated any specific lots to be released prior to October 2011, Grevey-Liberman could not have executed a partial release of lots to be held in trust. Moreover, Grevey-Liberman could not have granted a valid oral partial release of unknown lots prior to June 2010 because any release of land must be in writing. *See Gonzales v. Gonzales,* 116 N.M. 838, 845, 867 P.2d 1220, 1227 (1993) ("[T]he common law Statute of

---

[9] Courts have also consistently held that the traditional debtor-creditor relationship is insufficient to give rise to a trust or similar fiduciary duties. *See* Restatement (Third) of Trusts, § 5(i)-(k) (2003) (noting that a contract to convey property does not give rise to a fiduciary relationship); *Holdeman v. Devine*, 474 F.3d 770, 778 (10th Cir. 2007) ("[T]he relationship of debtor to creditor that results from contract is not fiduciary in nature.").

-14-

Frauds requires that transfers of real property be in writing.").  The Court concludes that Grevey-Liberman did hold any partial releases of lots in trust for Mr. Brutsche.

CONCLUSION

Based on the foregoing, Grevey-Liberman's Motion for Summary Judge will be granted.

Mr. Brutsche's claim for breach of contract contained in Count 1 of Complaint is dismissed.  The

Court will enter a separate judgment and order consistent with this Memorandum Opinion.


_____
ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket: November 7, 2012

COPY TO:

Spencer Lewis Edelman
Modrall Sperling Roehl, Harris & Sisk PA
PO Box 2168
Albuquerque, NM 87103-2168

Paul M Fish
Modrall Sperling Roehl, Harris & Sisk PA
PO Box 2168
Albuquerque, NM 87103-2168

George D. Giddens, Jr
10400 Academy Rd. NE, Suite 350
Albuquerque, NM 87111-1229

Ann H. Washburn
10400 Academy Rd. NE, Suite 350
Albuquerque, NM 87111-1229