UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re: RALPH LEO BRUTSCHE,            No. 11-13326-j7

     Debtor.

YVETTE GONZALES, Chapter 7 Trustee,

     Plaintiff,

v.                                                Adversary No. 11-01189-j

MARC LOIS LIBERMAN, et al,

     Defendants.

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendants Grevey-Libermans'[1] Motion to Dismiss Counts II and III of Complaint (the "Motion to Dismiss") filed by and through their attorneys of record, Modrall Sperling, Roehl, Harris, & Sisk PA (Paul Fish). *See* Docket No. 4. Plaintiff Ralph Leo Brutsche[2] filed a response, and Grevey-Liberman filed a reply (Docket Nos. 11 and 14). Grevey-Liberman seek dismissal of Mr. Brutsche's claims for unjust enrichment and to recover fraudulent transfers on the grounds that: (1) equitable remedies are only available in

---

[1] The complete list of Defendants in this adversary proceeding (together referred to as "Grevey-Liberman") is as follows: Marc Lois Liberman; Bank of America, N.A. as Trustee of the Marc Louis Liberman Trust established under the Marguerite Liberman Revocable Trust; Bank of America, N.A. as Trustee of the Michele Louis Liberman Revocable Trust; Helen A. Grevey; Marianne Fischer; Francis S. Liberman; Wells Fargo, N.A. Trustee of the Ira. L. Liberman and Frances S. Liberman Revocable Trust; Eileen Grevey Hillson as Trustee under the Lisa Marie Clifford Trust #1; Eileen Grevey Hillson as Trustee under the Sean David Clifford Trust #1; Eileen Grevey Hillson as Trustee under the Jack and Joanne M. Grevey Trust for the Benefit of Lisa Marie Clifford; Eileen Grevey Hillson as Trustee under the Jack and Joanne M. Grevey Trust for the Benefit of Sean David Clifford; and Eileen Grevey Hillson.

[2] Yvette J. Gonzales, Chapter 7 Trustee, was substituted as the Plaintiff in this adversary proceeding by order of the Court on October 2, 2012. *See* Order Substituting Yvette J. Gonzales, Chapter 7 Trustee, as Plaintiff (Docket No. 29). Because Mr. Brutsche filed the response to the Motion to Dismiss, the Court will refer to Mr. Brutsche as the Plaintiff for purposes of this Memorandum Opinion only.

the absence of an enforceable contract; (2) Grevey-Liberman was not unjustly enriched because Mr. Brutsche failed to perform under the contract; and (3) Mr. Brutsche received reasonably equivalent value in exchange for the payments to Grevey-Liberman.

After consideration of the Motion to Dismiss, the Response, and Grevey-Liberman's Reply, and the applicable statutes and relevant case law, and being otherwise sufficiently informed, the Court finds that the Complaint fails to allege sufficient facts to state a claim for unjust enrichment and fraudulent transfer. The Court will therefore grant the Motion to Dismiss.

## LEGAL STANDARD FOR EVALUATING A MOTION TO DISMISS

A motion to dismiss for failure to state a claim is governed by Rule 12(b)(6), Fed.R.Civ.P, made applicable to adversary proceedings by Rule 7012, Fed.R.Bankr.P. The purpose of a motion to dismiss under Rule 12(b)(6), Fed.R.Civ.P is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir.1994). In evaluating a motion to dismiss under Rule 12(b)(6), the Court accepts as true all well pleaded facts and evaluates those facts in the light most favorable to the plaintiff. *Rosenfield v. HSBC Bank, USA,* 681 F.3d 1172, 1178 (10th Cir. 2012). "[C]ourts may consider not only the complaint itself, but also attached exhibits, and documents incorporated into the complaint by reference." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir.2009) (citation and internal quotation marks omitted). To survive a motion to dismiss under Rule 12(b)(6), Fed.R.Civ.P., the complaint must contain enough facts to state a cause of action that is "plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). In other words, the plaintiff must "nudge [his] claims across the line from conceivable to plausible." *Id.*

In applying this standard, the Court should look "to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Pace v. Swerdlow*, 519 F.3d 1067, 1073 (10th Cir.2008) (internal quotations omitted). The Court must not "weigh the potential evidence that the parties might present at trial" in order to test the sufficiency of the complaint for purposes of Rule 12(b)(6). *Sutton v. Utah State Sch. For the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir.1999) (internal citations omitted). Nevertheless, to withstand dismissal, the plaintiff must sufficiently allege all facts necessary to support the required elements under the legal theory proposed. *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir.2007).

The Tenth Circuit has observed that there is some disagreement among Circuit Courts as to whether the new standard enunciated by *Twombly* results in a minimal change, or whether the new standard, in fact, requires a significantly higher standard of pleading. *Khalik v. United Air Lines,* 671 F.3d 1188, 1191 (10th Cir. 2012) (comparing *In re Travel Agent Comm'n Antitrust Litig.,* 583 F.3d 896, 911 (6th Cir. 2009) (finding that, to satisfy the *Twombly* standard, the plaintiff must plead enough specific facts "to raise a reasonable expectation that discovery will reveal evidence) *with id.* at 912 (Merritt, J., dissenting) and *Tamayo v. Blagojevich,* 526 F.3d 1074, 1083 (7th Cir. 2008) (stating that *Twombly* "did not . . . supplant the basic notice-pleading standard)). The Tenth Circuit instructs that the *Twombly* standard is "a middle ground between heightened fact pleading, which is expressly rejected, and allowing complaints that are no more than labels and conclusions or a formulaic recitation of the elements of a cause of action, which the Court stated will not do." *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008) (internal quotation marks and citations omitted). In short, within the Tenth Circuit, the notice pleading requirement under "Rule 8(a)(2) still lives." *Khalik,* 671 F.3d at 1191. With these

principles in mind, the Court will evaluate the sufficiency of the Complaint in light of the Motion to Dismiss.

FACTUAL ALLEGATIONS CONTAINED IN THE COMPLAINT[3]

Mr. Brutsche purchased undeveloped real property in Santa Fe County, New Mexico (the "Property") from Grevey-Liberman or Grevey-Liberman's predecessors. *See* Complaint, ¶¶ 10 and 11. On or about June 24, 2005, Mr. Brutsche executed a Secured Promissory Note (the "Note") in favor of Grevey-Liberman or their predecessors in the amount of $5,182,000.00. *See* Complaint, ¶ 10. The Note called for annual payments of $460,304.00 plus accrued interest. *See* Secured Promissory Note attached to the Complaint as Exhibit A (Docket No. 1-1). The Note provides that payments are to be applied first to any accrued interest and then to principal. *Id.* The full amount of the debt due under the Note was due on June 24, 2010. *Id.*

On June 24, 2005, Mr. Brutsche executed and delivered a mortgage (the "Mortgage") in favor of Grevey-Liberman or their predecessors pledging the Property and improvements thereon, rents, and profits as security for payment of the Note. *See* Mortgage attached to the Complaint as Exhibit B (Docket No. 1-2). The Mortgage was duly recorded with the Clerk of Santa Fe County, New Mexico. *See* Complaint, ¶ 13.

Paragraph 5.15.5 of the Mortgage provides:

> Partial releases from the lien of the Mortgage shall be given for the subdivided residential lots as generally shown on Exhibit B (Phase 1) and future residential lots for which there are future approved subdivision plats for future phases (total of 107 lots) (provided that the appropriate infrastructure security has posted with the County of Santa Fe for the required infrastructure for the phase in which the lots to be released are located) at a Lot Release Price (principal payment per acre) of Seventy Three Thousand Dollars ($73,000.00) per lot plus all accrued interest due under the Note and subject to the following requirements: (A) Each generally shown on Exhibit C; and (B) the "shared lots" as shown on Exhibit C must be released first at a Lot Release Price of $25,000 per lot to be applied against the One Million Dollar credit referenced above.

---

[3] The factual allegations are treated as true for the purposes of the instant Motion to Dismiss only.

Paragraph 5.15.6 of the Mortgage provides:

> Partial releases will be allowed only based on recorded subdivision plats and only for an entire lot or tract as shown on an approved recorded subdivision plat. Prior to any release of any Lots, an infrastructure guarantee (or equivalent bond, letter of credit, etc.) in favor of the applicable government entity must be in place to cover all infrastructure requirements applicable to such the subdivision plat (roads, sewer, utility lines, etc.). Mortgagor shall deliver to Mortgagee written notice requesting such partial release, identifying the lot(s) or tract(s) sought to be released (Request for Release). Mortgagor shall not be entitled to any partial releases during any period of time when there exists an event of default or an event with which the giving of notice or lapse of time, or both, would constitute an event of default pursuant to the terms of the Mortgage. Buyer shall pay all costs in preparing and recording each release and any necessary and reasonable out-of-pocket expenses incurred by Mortgagee in connection with any partial release.

*See* Mortgage attached to the Complaint as Exhibit B (Docket No. 1-2).

Between June 2007 and July 22, 2007, Mr. Brutsche paid Grevey-Liberman at least $162,270.00 in principal under the Note (the "2007 Transfer"). *See* Complaint, ¶ 15. Between July 22, 2007 and July 22, 2012 (the "Petition Date"), Mr. Brutsche paid Grevey-Liberman at least $366, 939.00 in principal under the Note (the "Four Year Transfers"). *Id.* at ¶ 16. Mr. Brutsche did not designate which lots he wanted released after making payments under the Note. *Id.* at ¶ 17. According to Mr. Brutsche, the parties agreed that Grevey-Liberman would release those lots from the lien of the Mortgage at such time when Mr. Brutsche designated the desired lots. *Id.* Mr. Brutsche also alleges that at the time of the Four Year Transfers: (1) he was not in default under the Note or Mortgage; and (2) he met all the necessary conditions entitling him to the release of a certain number of lots under the terms of the Mortgage. *Id.* at ¶¶ 18-19.

Mr. Brutsche filed a petition commencing a voluntary bankruptcy case under Chapter 11 of the Bankruptcy Code on July 22, 2011.[4] *Id.* at ¶ 1. Shortly before commencing the case, Mr. Brutsche made demand for release of lots 40, 45, 48, 49, 50, and 27 in High Summit III, Phase 2

---

[4] The Honorable James Starzynski entered an order converting the case from Chapter 11 to Chapter 7 on June, 8, 2012. The case was transferred to the Honorable Robert H. Jacobvitz on July 30, 2012.

(the "Phase 2 Lots"), which were secured by the Mortgage. *Id.* at ¶ 20. Grevey-Liberman refused to release any lots from the lien of the Mortgage. *Id.* at ¶ 21.

DISCUSSION

Mr. Brutsche commenced this adversary proceeding for breach of contract, unjust enrichment, and to avoid and recover fraudulent transfers pursuant to 11 U.S.C. §§ 544, 548, 550(a), and 551 and the New Mexico Fraudulent Transfer Act ("NMFTA"), N.M.S.A.1978 § 56-10-18(A)(2) (1989). *See* Mr. Brutsche's Complaint ("Complaint") (Docket No. 1). In December, 2011, Grevey-Liberman filed a Motion for Summary Judgment seeking dismissal of Mr. Brutsche's claim for breach of contract. Mr. Brutsche argued that Grevey-Liberman breached the Mortgage by wrongfully refusing to release the Phase 2 Lots from the lien of the Mortgage after Mr. Brutsche fulfilled all necessary conditions entitling him to such releases. The Court found that Mr. Brutsche did not fulfill the necessary conditions entitling him to any of the partial releases under the Mortgage that he sought. *See* Memorandum Opinion (Doc. No. 33) (the "Summary Judgment Opinion"). The Court entered final judgment in Grevey-Liberman's favor on the breach of contract claim. *See* Final Judgment Granting Relief Requested by Defendant (Docket No. 34).

In the present action, Grevey-Liberman seek dismissal of Mr. Brutsche's claims for unjust enrichment and to avoid and recover fraudulent transfers. The factual bases for the unjust enrichment claim and breach of contract claim are nearly identical. However, because the Court's analysis in the context of the Motion to Dismiss is confined to the allegations in the Complaint, the Court will not consider any of the facts not put in material dispute in connection with Grevey-Libermans' Motion for Summary Judgment.

1. *Whether the Complaint states a claim for unjust enrichment.*

Grevey-Liberman seek to dismiss Mr. Brutsche's unjust enrichment claim. Grevey-Liberman argue that equitable claims are precluded because the Mortgage governs all rights and obligations relating to lot releases and that any remedy for breach of the Mortgage will make Mr. Brutsche whole. Mr. Brutsche counters that claims for unjust enrichment and breach of contract may be plead in the alternative. Although the Court will dismiss the unjust enrichment claim, it does not do so based solely on the terms of the Mortgage.

To prevail on a claim for unjust enrichment under New Mexico law,[5] the aggrieved party must show that: "(1) another has been knowingly benefitted at [its] expense (2) in a manner such that allowance of the other to retain the benefit would be unjust." *Ontiveros Insulation Co. v. Sanchez,* 129 N.M. 200, 203, 3 P.3d 695, 698 (Ct.App. 2000). Claims for unjust enrichment are equitable in nature. *Arena Resources, Inc. v. Obo, Inc.,* 148 N.M. 483, 487, 238 P.3d 357, 361 (Ct.App. 2010). Although the existence of a "contractual relationship … does not [automatically] foreclose a claim for unjust enrichment," claims for unjust enrichment are disfavored where the parties have a valid, enforceable contract. *Starko v. Presbyterian Health Plan, Inc.,* 276 P.3d 252, 278 (N.M.Ct.App. 2011); *Hydro Conduit Corp. v. Kemble,* 110 N.M. 173, 175, 793 P.2d 855, 857 (1990) ("[Q]uasi-contractual obligations [are] created by the courts for reasons of justice and equity, notwithstanding the lack of any contractual relationship between the parties.") (internal quotations omitted).[6] As one court pointed out, "'equity jurisdiction has never given the judiciary a roving commission' to do whatever it wishes in the

---

[5] Pursuant to the terms of the Mortgage, all disputes relating to the Mortgage shall be governed by New Mexico law. *See* Section 5.11 (The Mortgage shall be "governed by and construed under and in accordance with the laws of the State of New Mexico.").

[6] *See also Ontiveros Insulation Co.,* 129 N.M. at 203-204, 3 P.3d at 698-699 ("The theory [of unjust enrichment] has evolved largely to provide relief where, in the absence of privity, a party cannot claim relief in contract and instead must seek refuge in equity."); *Elliot Industries Limited Partnership v. BP America Production Co.,* 407 F.3d 1091, 1117 (10th Cir. 2005) (applying New Mexico law to conclude that claims for unjust enrichment fail where the claim is grounded in the parties' contractual relationship).

name of fairness or public welfare." *United Properties Ltd.,* 134 N.M. 725, 731, 82 P.3d 535, 541 (Ct.App. 2003) (quoting *In re Adoption of Francisco A.*, 116 N.M. 708, 730, 866 P.2d 1175, 1197 (Ct.App.1993) (Hartz, J., concurring in part and dissenting in part)). Thus, the Court generally may not "use equitable principles to save a party from the circumstances it created." *Id.* at 734, 544.

In order for one party to a valid, enforceable contract to state claim for unjust enrichment against the other party to the contract, it must plead sufficient facts to show "that the policy favoring freedom of contract ought to give way to one of the well-defined equitable exceptions." *United Properties Ltd. v. Walgreen Properties, Inc.,* 134 N.M. at 729, 82 P.3d at 539 (internal quotations omitted). Those exceptions include grossly inequitable conduct such as: (1) fraud, (2) oppression, (3) unconscionable conduct; (4) undue influence; (5) illegality; or (6) "other grounds of righteousness, justice and morality." *Id.* at 734, 544 (internal quotations omitted); *Arena Resources, Inc.,* 148 N.M. at 487, 238 P.3d at 361; *Nearburg v. Yates Petroleum Corp.*, 123 N.M. 526, 537, 943 P.2d 560, 571 (Ct.App. 1997); *Montano v. N.M. Real Estate Appraiser's Bd.*, 145 N.M. 494, 497, 200 P.3d 544, 547 (Ct.App. 2008).

The Court agrees with Mr. Brutsche that the existence of a valid contract between the parties does not automatically foreclose Mr. Brutsche's claim for unjust enrichment. However, based on the allegations in the Complaint, the Court is not persuaded that Mr. Brutsche's unjust enrichment claim is in any way distinct from his claim for breach of contract or that any of Grevey-Liberman's alleged conduct would support an unjust enrichment claim. The factual allegations supporting each claim are identical and are directed towards conduct giving rise to the breach of contract claim. Mr. Brutsche alleges that Grevey-Liberman wrongfully refused to release the Phase 2 Lots from the lien of the Mortgage in violation of its obligations under the

Mortgage and the agreement of the parties after Mr. Brutsche fulfilled all necessary conditions entitling him to such releases.  These allegations are grounded in the parties' contractual relationship.  If the Court accepts these allegations as true, Mr. Brutsche has a full and adequate remedy under the parties' contract.

Mr. Brutsche has not alleged facts supporting the application of any equitable exceptions that would justify overriding the parties' contract.  Mr. Brutsche does not allege facts, which, if true, would establish that Grevey-Liberman's behavior was oppressive, fraudulent, or illegal, or that Grevey-Liberman otherwise exhibited serious moral turpitude.  Instead, Mr. Brutsche alleges that Grevey-Liberman failed to perform their obligations under the contract.  The fact that Mr. Brutsche paid substantial sums under the promissory notes and suffered a hardship by not obtaining lot releases is insufficient to state a claim for unjust enrichment.  Absent any allegations concerning grossly inequitable conduct on the part of Grevey-Liberman, the Court "may not rewrite obligations that the parties have freely bargained for themselves." *Smith v. Price's Creameries*, 98 N.M. 541, 545, 650 P.2d 825, 829 (1982).  Under the circumstances of this case, the Mortgage must control whether, and to what extent, Mr. Brutsche is entitled to any partial releases as well as any remedy for breach of an obligation to provide such releases.

The Court concludes that Mr. Brutsche has failed to alleged sufficient facts to support a claim for unjust enrichment.  The unjust enrichment claim contained in Count II of the Complaint is therefore dismissed.

      2. *Whether the Complaint states a claim for fraudulent transfer*

Grevey-Liberman also seek to dismiss Mr. Brutsche's fraudulent transfer claims because the payments made by Mr. Brutsche to Grevey-Liberman were on account of an antecedent debt. To state a claim for fraudulent transfer under 11 U.S.C. § 548(a)(1)(B), the plaintiff must

demonstrate that the debtor "received less than a reasonably equivalent value in exchange for the transfer." 11 U.S.C. § 548(a)(1)(B)(i).[7] Similarly, the constructive fraud provisions under the NMFTA contain a requirement that the debtor made the transfer "without receiving a reasonably equivalent value in exchange for the transfer." N.M.S.A.1978 § 56–10–18(A)(2). The Plaintiff bears the burden of demonstrating that the transferor received less than a reasonably equivalent value in exchange for the transfer.[8] To the extent that a particular transfer is avoided under Section 548 or the NMFTA, the Trustee may also avoid and/or recover the transferred funds under 11 U.S.C. §§ 544(b), 550, and 551.[9]

Grevey-Liberman contend that because Mr. Brutsche received a dollar-for-dollar reduction in debt for each payment he made, Grevey-Liberman provided reasonably equivalent value in exchange for what they received. Mr. Brutsche counters that the value he received was inadequate because Grevey-Liberman failed and refused to release the Phase 2 Lots from the lien of the Mortgage.

Under the NMFTA, "[v]alue is given for a transfer or an obligation if, in exchange for the transfer or obligation, property is transferred or an antecedent debt is secured or satisfied." N.M.S.A. 1978 § 56-10-17(a). *See also In re Hedged-Investments Associates, Inc.,* 84 F.3d 1286, 1289 (10th Cir. 1996) ("[A] debtor receives 'value' for a transfer if the transfer satisfies a

---

[7] The plaintiff must also demonstrate harm to creditors or other parties in interest by satisfying one of three alternative subsections under 11 U.S.C. § 548(a)(1)(B)(ii). Grevey-Liberman do not seek dismissal on grounds that Mr. Brutsche has failed to allege the elements required to satisfy 11 U.S.C. § 548(a)(1)(B)(ii).
[8] *See In re Kinderknecht*, 470 B.R. 149, 169 (Bankr.D.Kan.2012) (stating that the Chapter 7 trustee, as the party seeking to set aside a transfer as constructively fraudulent, bears the burden of proving that the debtor received less than a reasonably equivalent value); *In re Brooke Corp.*, 469 B.R. 68, 70 (D.Kan.2012) ("The Trustee bears the burden to show the debtor received less than REV [reasonably equivalent value].") (internal citations omitted); *In re Tri–Valley Distributing, Inc.*, 452 B.R. 837, 845 (Bankr.D.Utah 2011) (under Utah's fraudulent conveyance statutes, plaintiff must demonstrate that the transferor did not receive reasonably equivalent value).
[9] Section 544(b) provides, in relevant part, that "the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an [allowable] unsecured claim." 11 U.S.C. § 544(b)(1). Section 550 provides that "the trustee may recover, for the benefit of the estate," the value of any transfer avoided under Sections 544 or 548. 11 U.S.C. § 550. Similarly, Section 551 provides that "[a]ny transfer avoided under section …544…[or]…section 548… is preserved for the benefit of the estate…." 11 U.S.C. § 551.

-10-

claim [or debt] the transferee-creditor has against the debtor."). Although the Tenth Circuit has not weighed in on the matter, a number of courts have held that "a dollar-for-dollar reduction in debt constitutes-as a matter of law-reasonably equivalent value for purposes of the fraudulent-transfer statutes." *In re Southeast Waffles, LLC,* 702 F.3d 850, 857 (6th Cir. 2012).[10] As one court pointed out, a dollar-for-dollar reduction in debt is not merely reasonably equivalent value, but is actually "perfectly equivalent value." *In re All-Type Printing, Inc.,* 274 B.R. 316, 324 (Bankr.D.Conn. 2002).

The Complaint alleges that Mr. Brutsche paid Grevey-Liberman at least $366,939.00 in principal under the Note during the Four Year Transfers period. Pursuant to its terms, the Note must be paid in:

> Equal annual installment payments of $460,304 (four hundred sixty thousand three hundred four dollars) or more commencing one (1) year from the Date of Note with the entire balance due and payable on the fifth anniversary of the Date of the Note.

*See* Secured Promissory Note attached to the Complaint as Exhibit A (Docket No. 1-1). The Note also provides that "[p]ayments received shall be applied first to accrued interest, balance to principal." *Id.* The Complaint does not expressly allege that the payments Mr. Brutsche made "in principal under the note" resulted in a corresponding reduction in the amount of indebtedness owed under the Note. However, that is the logical inference to be made from Mr. Brutsche's allegations. *See Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007) (the complaint must allege sufficient facts to state a claim that is "plausible

---

[10] *See also In re First Alliance Mortg. Co.,* 471 F.3d 977 (9th Cir. 2006) ("[R]epayments of fully secured obligations-where a transfer results in a dollar for dollar reduction in the debtor's liability-do not hinder, delay, or defraud creditors because the transfers do not put assets otherwise available in a bankruptcy distribution out of their reach .") (internal quotations omitted); *In re Propex Inc.,* 415 B.R. 321, 332-33 (Bankr.E.D.Tenn. 2009) (finding reasonably equivalent value as a matter of law under both the Bankruptcy Code and TUFTA where debtor received a dollar-for-dollar reduction in debt in exchange for its $20 million payment); *In re Anderson,* 386 B.R. 315, 331 (Bankr.D.Kan. 2008) (J. Nugent) (dollar-for-dollar reduction of debt constituted reasonably equivalent value for the purposes of the Uniform Fraudulent Transfer Act); *In re Racing Services, Inc.,* 482 B.R. 276, 295 (Bankr.D.N.D. 2012) (same); *In re Coors of North Mississippi, Inc*., 66 B.R. 845 (Bankr.N.D.Miss.1986) (same).

-11-

on its face"). The Court therefore concludes that Mr. Brutsche received reasonably equivalent value in exchange for the payments under the Note as a matter of law.

Mr. Brutsche has not pled sufficient facts to state a claim for fraudulent transfer under 11 U.S.C. §§ 544, 548(a)(1)(b), 550(a), and 551 and the NMFTA, § 56-10-18(A)(2). The fraudulent transfer claims contained in Count III of the Complaint are therefore dismissed.

## CONCLUSION

Based on the foregoing, the Court will grant Grevey-Liberman's Motion to Dismiss. The Court will enter an order consistent with this Memorandum Opinion.

_____
ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket: February 11, 2013

COPY TO:

Paul M Fish
Modrall Sperling Roehl, Harris & Sisk PA
PO Box 2168
Albuquerque, NM 87103-2168

George D. Giddens, Jr
10400 Academy Rd. NE, Suite 350
Albuquerque, NM 87111-1229

Ann H. Washburn
10400 Academy Rd. NE, Suite 350
Albuquerque, NM 87111-1229